**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ST. JOE PAPER COMPANY, and Local 118, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondents.**

United States Court of Appeals Second Circuit.

Argued March 4, 1963.

Decided June 25, 1963.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stephen B. Goldberg, Allison W. Brown, Jr., Jules H. Gordon, Attys., N. L. R. B., for petitioner.

Ventura & Cohen, Rochester, N. Y. (Harold Cohen, Rochester, N. Y., of counsel), for respondent union.

Weisman, Allan, Spett & Sheinberg, New York City (Irving Rozen, New York City, of counsel), for respondent company.

Before CLARK and WATERMAN, Circuit Judges, and DIMOCK, District Judge.

WATERMAN, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order, 135 N.L.R.B. No. 134, directed against St. Joe Paper Company and Local 118, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The Board found that the union violated Sections 8(b) (1) (A) and 8(b) (2) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., by causing two successive employers to discharge an employee, James Rotolo, who had previously been expelled from Local 118 on grounds other than nonpayment of periodic dues and initiation fees. The Board found that St. Joe, the second of the employers involved, violated Sections 8(a) (1) and 8(a) (3) of the Act by discharging Rotolo because of union pressure.[1]

The evidentiary facts of the case may be summarized as follows: In the spring of 1960, Rotolo was hired as an "extra" driver by Goetzman and Newman, Inc.,

---

1. No charge was filed, and no complaint was issued, against Goetzman and Newman, Inc., the first of the employers involved.

a trucking firm which operated under a contract with Local 118. In July of that year the union "barn steward" at Goetzman and Newman learned that the employer would soon lay off one of its two extra drivers—Rotolo, who was not a union member, or Shenks, who was a member in good standing. The barn steward then asked the union's secretary-treasurer whether Rotolo or Shenks should be laid off. The secretary-treasurer said, "Keep Shenks on." The union barn steward then told Goetzman's terminal manager that as long as this was a "union barn," "the union man Shenks [should] be kept on." On July 29, 1960, the terminal manager told his assistant that "the union had been putting pressure on him," and that he had to discharge Rotolo because Rotolo "was not a union man." Rotolo's employment was thereafter terminated, and, on August 22, 1960, he filed a charge with the Board alleging that Local 118 had caused his discharge from Goetzman and Newman.

In September of 1960, Rotolo was employed by St. Joe Paper Company as a "casual" truck driver (on a day-to-day basis). Between October 23 and November 23, he worked 28 consecutive days for the company. (St. Joe's contract with Local 118 provided that casual drivers who worked 30 consecutive days became "regular" drivers entitled to certain job security). Rotolo's immediate supervisors, Howell and LaMagro, appeared to be satisfied with his work and advised the Company Production Manager that Rotolo would be a good regular driver. About a week prior to November 23, however, the President of Local 118 had a casual conversation with St. Joe's General Manager and told him that Rotolo was a "trouble maker," "a bad actor," and "a problem" who "had to be watched" and who "was always running to the Labor Board." The General Manager related this conversation to his Production Manager, saying that he had been led to believe, by the union President's comments, that the union preferred that St. Joe not retain Rotolo. The General Manager then "suggested" that Rotolo be discharged, but warned the Production Manager against telling LaMagro or Howell about the conversation with the union President. On November 23, Rotolo was told not to report for work the next day. A few days later he was advised that his employment had been terminated.

■ Upon these facts we find that there was substantial evidence to support the Board's conclusion that Local 118 caused Goetzman and Newman, Inc., to discharge Rotolo, and that St. Joe Paper Company, in violation of §§ 8(a)(1) and 8(a)(3), sought to curry favor with the union by also discharging him.

■ Whether Rotolo's discharge from St. Joe was at the instance, suggestion or behest of the union is a closer question, but we believe that the Board's finding must again be sustained. Under 29 U.S.C. § 158(b)(2), it is an unfair labor practice for a labor organization or its agents

> "to cause or attempt to cause an employer * * * to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership." [2]

Here, from the statements of St. Joe's General Manager himself, the Board could conclude that if the union President had not made his derogatory comments about Rotolo, Rotolo would not have been discharged. The relationship of cause and effect, the essential feature of Section 8(b)(2), "can exist as well

2. Before the Examiner the president of Local 118 testified that Rotolo had been expelled from the union for "dishonesty," but there was no further explanation thereof, and there was no testimony that this purported ground of expulsion had ever been communicated to either of the employers here involved.

where an inducing communication is in terms courteous or even precatory as where it is rude and demanding." N. L. R. B. v. Jarka Corp., 198 F.2d 618, 621 (3 Cir. 1952). Had the union been innocent of any intent to cause Rotolo's discharge, no violation of § 8(b) (2) with respect to this incident could have been found. But here the nature of the derogatory comments made following the union's prior success in causing Rotolo's discharge from the employ of Goetzman and Newman furnish substantial evidence taken from the record as a whole to support the Board's finding that the union intended the result it achieved.

Enforcement granted.